Filed 11/4/25  P. v. Ringo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B342081 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA094947) |
| v. | |
| CARY RINGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victor L. Wright, Judge.  Affirmed.

Brian C. McComas, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————————

Cary Ringo appeals from the judgment after the trial court denied his motion to withdraw his no contest plea.  The trial court sentenced Ringo to an aggregate prison term of 10 years for willfully inflicting corporal injury resulting in a traumatic condition on someone with whom he had a dating relationship (Pen. Code, § 273.5, subd. (a)).[1]  We appointed counsel to represent Ringo on appeal.  After reviewing the record counsel for Ringo did not identify any arguable issues and asked this court to conduct an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436, which we did.  We have not identified any arguable issues either.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The People Charge Ringo with Three Domestic Violence Crimes*

On October 3, 2016 Ringo and Cheryl Shields were in a dating relationship.  On that day Ringo became upset with Shields when he found phone numbers he did not recognize on a social media app on her cell phone.  Ringo accused Shields of using the app to contact her former boyfriend.  Ringo pushed Shields, threw her on the bed, choked her, and hit her with his belt on her legs and stomach area.

Ringo took Shields to work the next day.  When Ringo picked Shields up from work, he was still upset with her and argued with her in the car.  Ringo pulled the car over and hit and choked Shields, causing her to lose consciousness.  When they got home, Ringo choked Shields and hit her with an umbrella and a

---

[1]    Undesignated statutory references are to the Penal Code.

yard stick.  Ringo also whipped her with a belt and threw a wine bottle at her.

On October 5, 2016 Shields's brother visited her and told her to call the police.  Ringo asked Shields about her conversation with her brother and became upset with her.  Ringo again pushed, hit, and choked Shields.

The next day, Shields's brother took her to work.  At lunch she went to the police and reported the incidents with Ringo.  Shields told the police officers that she would be seeking a restraining order against Ringo.

On October 7, 2016 the police responded to a "family disturbance call."  On the way officers learned Ringo was leaving the location.  Officers saw Ringo's car, conducted a "high-risk traffic stop," and arrested him.

On October 12, 2016 the People charged Ringo with three counts of committing corporal injury resulting in a traumatic condition on someone with whom he had a dating relationship, within the meaning of section 273.5, subdivision (a).  The People alleged that Ringo had eight prior felony convictions between 1995 and 2004, four of which were convictions for serious or violent felonies within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served five prior prison terms, within the meaning of section 667.5, former subdivision (b).

B.    *Ringo Pleads No Contest, and the Trial Court Denies Ringo's Motion To Withdraw His Plea*

On June 5, 2017 Ringo agreed to plead no contest to all three counts, in exchange for a recommendation the court place him on probation for five years, including one year in a

residential program and 52 weeks of domestic violence classes. The trial court accepted Ringo's plea, and Ringo admitted the prior conviction and prior prison term allegations. The court released Ringo to a substance abuse treatment program and set sentencing for June 5, 2018.

On July 11, 2017 the trial court received an "AWOL report"[2] and remanded Ringo into custody. Over the People's objection, however, the court released him back into the substance abuse treatment program.

On August 28, 2017 the trial court was "advised that the defendant had a dirty test" and had been taken into custody. On September 11, 2017 the trial court again released Ringo and continued the matter "for proof of progress and status reports on defendant's treatment program and monitoring."

On September 25, 2017 the trial court received "proof of AWOL report from treatment program indicating the defendant has left treatment." The court issued a bench warrant and set bail at $250,000. Two days later, Ringo appeared in court, and the court recalled the bench warrant. The People also announced they would be filing new felony charges against Ringo.[3]

---

[2] AWOL is a military term meaning "absent without leave," or permission. (*People v. Cunningham* (2015) 61 Cal.4th 609, 625.)

[3] The People filed a new case charging Ringo with two counts of making a criminal threat; two counts of false imprisonment by violence; one count of obstructing or resisting an executive officer in the performance of his or her duty; and one count of dissuading a witness by force or threat. The appeal in that case is pending.

4

On June 27, 2018 Ringo retained private counsel to represent him, and the trial court relieved the public defender. On August 16, 2019 counsel declared a doubt about Ringo's competency, and the trial court suspended the criminal proceedings. The trial court appointed an expert under Evidence Code section 730 to examine Ringo. After the expert submitted his report, the trial court on November 8, 2019 found Ringo competent and reinstated the proceedings.

On May 20, 2021 Ringo requested "immediate sentencing on this case." The trial court ordered an expedited plea transcript, and on June 30, 2021 the court denied Ringo's oral motion to reduce his bail. After a series of continuances, which included relieving his retained counsel and reappointing the public defender on at least three occasions, the trial court on July 26, 2024 denied Ringo's motion under *People v. Marsden* (1970) 2 Cal.3d 118 to replace appointed counsel and appoint new counsel, but granted Ringo's request to represent himself under *Faretta v. California* (1975) 422 U.S. 806.

On October 8, 2024 Ringo filed a motion to withdraw his plea pursuant to section 1018, which states in relevant part: "On application of the defendant at any time before judgment . . . , the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." Ringo argued that the trial court should allow him to withdraw his plea because "[t]he court failed to honor its plea agreement for granting the defendant a program that 'did not' meet the said criteria for a dual diagnosis treatment [of] mental health and substance abuse" and that the treatment facility "misstated to the court that they were dual diagnosis."

5

The trial court denied the motion. The trial court stated: "It was a plea that was voluntarily taken on the matter . . . . You did it freely and voluntarily. There are no new facts and evidence that would support the court granting a motion to withdraw the plea. There's no change in circumstances." The trial court sentenced Ringo to a prison term of 10 years, consisting of middle term of three years for count 1 and one year (one-third the middle term) for counts 2 and 3, all doubled under the three strikes law.

On October 29, 2024 Ringo appealed from the October 8, 2024 judgment and order denying his motion to withdraw his plea.[4] He marked the box indicating "[t]his appeal challenges the validity of the plea or admission."

## DISCUSSION

After reviewing the record counsel for Ringo filed an opening brief raising no issues. On August 7, 2025 counsel advised Ringo of his evaluation of the record and his intention to file a no-issue brief. Counsel also sent Ringo "a copy of the transcripts of the record on appeal." On August 14, 2025 we advised appointed counsel "to send the record of this appeal and a copy of appellant's opening brief to appellant immediately." We also advised Ringo he had 30 days to submit a supplemental brief or letter stating any grounds of an appeal, contentions, or

---

[4] An order denying a prejudgment motion to withdraw a plea is not appealable, but is reviewable through the ensuing judgment, whereas an order denying a postjudgment motion to withdraw a plea is appealable. (*People v. Ribero* (1971) 4 Cal.3d 55, 62; *People v. Francis* (1954) 42 Cal.2d 335, 336; *People v. Alexander* (1955) 130 Cal.App.2d 529, 532.)

6

arguments he wanted us to consider.  We did not receive a response from Ringo.

Following a judgment based on a plea of no contest, the defendant must obtain a certificate of probable cause from the trial court to challenge the validity of the plea.  (§ 1237.5; Cal. Rules of Court, rule 8.304(b)(1).)  Absent a certificate of probable cause, appellate review is "limited to issues that do not require a certificate of probable cause."  (Cal. Rules of Court, rule 8.304(b)(3).)  We have reviewed that portion of the record and are satisfied that appellate counsel for Ringo has complied with his responsibilities and that there are no arguable issues.  (See *Smith v. Robbins* (2000) 528 U.S. 259, 277-284; *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende, supra,* 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.


SEGAL, Acting P. J.

We concur:


FEUER, J.



STONE, J.


7